HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a foreign insurance
company; THE CHARTER OAK FIRE
INSURANCE COMPANY, a foreign insurance
company,

      Plaintiffs,

   v.

H.D. FOWLER COMPANY, a Washington
Corporation; and KIEWIT INFRASTRUCTURE
WEST CO., a Delaware Corporation,

      Defendants.

NO: 2:19-cv-01050 JCC

H.D. FOWLER'S MOTION FOR
SUMMARY JUDGMENT

**Note on Calendar Motion:
November 1, 2019**

## I. INTRODUCTION

In Washington, it "is a cornerstone of insurance law that an insurer may never put its own interests ahead of its insured's."[1] An insurer must conduct and complete an investigation into a claim before refusing to pay it.[2] The insurer must conduct the investigation as a quasi-fiduciary, acting fairly and impartially at all times.[3] An insurer may not deny coverage first

---

[1] *Expedia v. Steadfast Ins.*, 180 Wn.2d 793, 803 (2014).
[2] *Aecon Bldg. Systems v. Zurich Am.*, 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008); WAC 284-30-330(4).
[3] RCW 48.01.030; *Declaration of Richard T. Beal Jr.*, **Ex. E**.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 1
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

and continue to investigate in the hopes "later developments" will "vindicate [its] decision."[4] When an insurer concludes it has no coverage, it must provide the insured a written letter communicating its decision,[5] and it must provide a reasonable explanation under the policy in relation to the facts and the law, supporting its decision.[6]

In the instant case, there can be no dispute that Travelers violated every one of these rules. On July 8, 2019, Travelers did two things: (1) it wrote a letter to its insured representing it had recently retained a consulting expert and was still investigating[7] and; (2) it simultaneously filed this lawsuit representing that there was an "actual and justiciable controversy," and seeking a declaration that it has no duty to defend or indemnify H.D. Fowler Company[8] from claims in the underlying matter.

It is undisputed that Travelers filed this suit before it had completed its investigation, before it delivered a written denial letter to Fowler, and before it provided Fowler an explanation of the factual and legal bases for its coverage decision. Because of this, the Court can and should conclude Travelers seeks declaratory relief before having satisfied its good faith obligations, and thus filed this suit with unclean hands. Because Travelers' violation of Washington's "cornerstone" rule of good faith gives rise to coverage by estoppel, Travelers is legally estopped from seeking declaratory relief regarding its policy defenses. Since its policy defenses are the sole subject of its complaint, Travelers' declaratory judgment claims should be dismissed in their entirety.

---

[4] *Aecon Buildings, at* 1236.
[5] WAC 284-30-380 (1).
[6] WAC 284-30-330 (13).
[7] *Beal Decl.*, **Ex. F**.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 2
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

## II. Factual Background[9]

This dispute arises out of damage to pipe supplied by Fowler to Kiewit Infrastructure West Company ("Kiewit") for use by Kiewit and its subcontractor Tunista Construction in the construction of a utility "Conveyance System" linking the Kent/Auburn corridor. The chain of parties was:

Owner: King County

General Contractor: Kiewit

Pipe installation subcontractor: Tunista Construction

Pipe Distributor: Fowler

Pipe manufacturer: Diamond Plastics Corporation

Fowler had no role in the installation or construction of the system. Fowler's only responsibility was to act as distributor for the Diamond pipe.

Generally, there are two types of conveyance pipe for a project of this kind---those which utilize a system of internal restraint (through mechanical "locking"), and those which use an "external" system of restraint which utilizes a harness that attaches to the outside of the pipe.

The pipe supplied by Diamond Plastics (known as "Diamond Lok") utilized a system of internal restraint, in which the installation contractor pushes or pulls segments of pipe together until they lock mechanically, forming a water tight connection.

The "Diamond Lok" pipe was custom fabricated and shipped to the Project site by Diamond Plastics under contract with Fowler. There was no contractual privity or

---

[8] Dkt. #1 (Travelers' complaint), p. 15, l. 12 – p. 20, l. 18.
[9] The recitation of facts contained in this section are set forth in the Declaration of Michael Dietzman and the Declaration of Richard T. Beal, Jr.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 3
(2:19-CV-01050 JCC)

relationship between King County and Fowler. Kiewit's sole use of the pipe was to use it in the installation of the Conveyance System.

In June of 2017, Diamond shipped the pipe to the jobsite, and Tunista began to use it in its installation. The project called for Tunista to bed the pipe in a "burrito wrap" of geotextile fabric and bedding material supplied through Kiewit suppliers other than Fowler.

The contract parties soon began to notice that Tunista could not install the piping without causing damage to the internal locking components of the pipe. After 200 feet of the "burrito-wrapped" pipe had been laid, Kiewit directed Tunista to stop installation, and wrote to Fowler advising it would be making claim.

Fowler investigated the availability of procuring replacement pipe from a different manufacturer, but in the height of the construction season could not find another manufacturer who was able to fabricate internal restraint replacement pipe in the time frame required. Fowler advised Kiewit, and Kiewit alleges it made the decision to mitigate the delays which resulted while construction was at a standstill, by switching to an "external restraint" approach.

In September 2017, Tunista resumed construction with "external restraint" pipe provided to it through Fowler. This required Tunista to rip out and destroy much of the "burrito wrap" bedding.  In addition, Kiewit claimed the alternate pipe required a 1.5' wider trench which it claims required significantly higher labor costs, and significant additional dewatering. This led to damage to the existing roadway and the need to replace curbs along the roadway. It also necessitated road grinding and repaving of the affected road surfaces.

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

1    In November 2017, Kiewit back-charged Fowler the sum of $1,564,698.73. While the

2    contract between Kiewit and Fowler contained an arbitration provision, Kiewit never filed

3    for arbitration, as it was able to set off its claim against Fowler's earned contract revenues.

4    After trying unsuccessfully with Kiewit and Diamond Plastics to resolve the claim

5    over the winter of 2018, Fowler tendered the claim to Travelers in April, 2018.[10]

6    On June 28, 2018, Travelers sent its one and only reservation of rights letter.  In the

7    first paragraph of the letter Travelers advised "This is not a declination of coverage." Since

8    Kiewit had not filed a "suit"[11] against Fowler, Travelers based its analysis of potentially

9    applicable exclusions upon the Kiewit "claim", and acknowledged the potential the claim

10   could trigger coverage under the insuring language of the policy:

11   *Although the coverage investigation is incomplete*, based on the
     *potential of property damage arising from an occurrence within the Travelers*
12   *policy period*, Travelers has agreed to provide H.D. Fowler with an attorney to
     assist with the retention of an expert and to protect the interests of H.D.
13   Fowler.[12]

14    At no time between the issuance of the reservation of rights and the filing of this suit

15   did Travelers ever write or advise Fowler that Travelers had determined there was no longer

16   a potential of coverage under the policy.[13]

17   On the same day it acknowledged the potential for coverage, Travelers adjuster

18   Catherine Sanders signed a letter, in which she represented that *she* would be analyzing

19   coverage and that a coverage investigation would be performed:

20   I will be responsible for analyzing the coverage under the referenced policies
     issued by Travelers and determining if there is coverage for the claims and

21

22

23   [10] *Declaration of Michael Dietzman*, ¶ 12.
     [11] *Dietzman Decl.*, **Ex. A** (definition of "suit," policy form CG 0001 (10 01)).
     [12] *Beal Decl.*, **Ex. A**.
24   [13] *Beal Decl.*, ¶ 4.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 5
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

damages alleged. *An investigation of the claim to determine coverage will be performed.*[14]

At no point between the time Ms. Sanders made the statement and the date this lawsuit was filed, did Ms. Sanders advise she had completed her investigation or made her coverage determination.[15]

On July 12, 2018, Fowler, through its legal representative, responded point by point to the reservation of rights letter setting forth factual information Fowler wished Travelers to consider in its investigation.[16]

Two months later, Travelers attorney Thomas Lether wrote back declining to provide a substantive response. In doing so, he advised that Travelers had retained him to serve as "coverage counsel" as part of its investigation:

> I have been retained by The Charter Oak Fire Insurance Company (hereinafter "Travelers"), as coverage counsel in this matter. We are currently reviewing the coverage issues presented in this claim.[17]

At no time prior to the date  Mr. Lether signed Travelers' complaint in this suit did he [Mr. Lether] advise Fowler or its legal representative that he had finished his review of the "coverage issues presented by the claim" or that Travelers had determined there "is no defense or indemnity coverage available under the policies,"[18] as Travelers would later claim in this suit.  Mr. Lether's filing of the suit on behalf of Travelers was Fowler's first notice that Mr. Lether and Travelers had made their coverage determination.

---

[14] *Beal Decl.*, **Ex. B**.
[15] *Beal Decl.* ¶ 6.
[16] *Beal Decl.*, **Ex. C**.
[17] *Beal Decl.*, **Ex. D**.
[18] *Beal Decl.*, ¶ 8.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 6
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

In the same time frame in which Mr. Lether served as "coverage counsel" for Travelers, he submitted sworn testimony and an expert report explaining the quasi-fiduciary role of "coverage counsel,"[19] which Mr. Lether also refers to as *Cedell* counsel:

> Nothing in *Cedell* prohibits an insurance company from retaining an attorney to assist, coordinate, and sometimes even direct the quasi-fiduciary claims-handling process, meaning the investigation, evaluation or adjustment of the claim (often referred to as "*Cedell* counsel"). For example, *Cedell* counsel may be retained to *review documents, request documents from an insured, interview witnesses, conduct an examination under oath, write or ghostwrite correspondence during the investigation, write or ghostwrite coverage determinations, discuss findings with the insurer's consultant on the investigation, coordinate with the policyholder or its representatives, and so on.* In this capacity, an attorney who acts in the quasi-fiduciary capacity is not acting in the role of litigation counsel or as a traditional advocate on the part of his or her client. While nothing in *Cedell* prohibits an insurance company from retaining *Cedell* counsel, the decision does have consequences… *As Cedell counsel, an attorney acts in a quasi-fiduciary capacity, not in the advocate capacity as when the attorney is litigation counsel.*[20]

In an expert report also filed in the Western District during Mr. Lether's tenure as Travelers' "coverage counsel" in its investigation of the Fowler claim, Mr. Lether goes on to emphasize that coverage counsel must act fairly and impartially, whereas litigation counsel acts in an adversarial capacity:

> Over the years, the traditional practice of having one counsel represent the insurer in regard to all aspects of the claim have changed. In fact, in a number of jurisdictions courts began to recognize that attorneys fulfilling investigatory activities may be acting more as an adjuster than as an attorney…
>
> *        *        *        *        *        *        *        *        *        *        *
>
> One of the reasons why there has been a shift in how insurers and courts view the rules of insurer counsel is premised on the concept that counsel representing insurers in litigation or similar proceedings have the right, and in fact, the obligation to their clients to act as advocates within the rules of professional responsibility in defending their client. In contrast, the role of

---

[19] *Beal Decl.*, **Ex. E**.
[20] *Beal Decl.*, **Ex. E** (emphasis added).



**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

claims handling/investigatory or *coverage counsel* is very different. The handling, investigation, evaluation, processing, and adjustment of claims is recognized in Washington law and understood within the industry to be a quasi-fiduciary process, which means that insurers (and their representatives) are required to be fair and impartial and must never place their own interests above those of the policyholder. *When an insurance company's counsel is engaged in investigating or adjusting a claim then that attorney has obligations on behalf of the insurer (and possibly in their own individual capacity[21]) to act as a quasi-fiduciary—i.e., to be fair and impartial and to consider the policyholder's interests equally with that of the insurer's.* This includes complying with the claims handling procedures and Fair Claims Settlement Practices Act established under Washington law. In fact, RCW 48.01.030 imposes an obligation of good faith on insurers, insureds, and their representatives. In my opinion, this includes insurance counsel engaged in the claims handling process.[22]

In yet another submission, Mr. Lether emphasized the quasi-fiduciary requirement to provide a written letter setting forth and explaining a claim denial:

[O]nce an insurance company makes its coverage determination, it needs to explain that determination in a meaningful way to its insured. This means that a coverage position *letter* needs to set forth *the factual basis* for the coverage position, *any and all applicable coverage language or legal analysis which supports the coverage position*, and a disclosure of what potential coverages may or may not be available.[23]

On July 8, 2019, Ms. Sanders sent Fowler a letter[24], but it was not a coverage determination letter. Instead the letter represented Travelers was still conducting its coverage investigation:

Due to the lack of information and the inconsistent information that was provided, Charter Oak *has now retained* a separate expert on the coverage side of this file *to also review the information and documentation which has been, and will be, provided by Kiewit and others…*

---

[21] The footnote in Mr. Lether's report reads as follows: "Although the question of whether or not counsel can be held legally responsible for an insurer's conduct has not been addressed, the courts in Washington have at least initially applied the obligations of good faith to individual claims adjusters in the case of *Keodalah v. Allstate.* For this reason, attorneys who are investigating or acting as adjusters need to recognize that in addition to the insurer being liable for the attorney's improper conduct, the attorney themselves may be individually liable."

[22] *Beal Decl.,* **Ex. E**. Expert Report in the matter of *MPN v. AFM,* pp. 4-5 (emphasis added).

[23] *Beal Decl.,* **Ex. E** (emphasis added).

[24] *Beal Decl.,* **Ex. F**.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 8
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

As can be seen from the above, Charter Oak *is not only investigating* the claim through Mr. Frazier's efforts on the defense side of the file but *is also reviewing independently all of the damage issues as part of its coverage investigation and through a separate expert.*[25]

On the same day, Travelers and Mr. Lether filed this suit. Travelers did not disclose to Fowler in its July 8 letter or at any earlier time that it had determined Travelers had no duty to defend or indemnify and was therefore going to file a declaratory judgment action.

In the complaint, Travelers, through Mr. Lether, represents that there is "no indemnity or defense coverage under the policy"[26] and asserts bare allegations that there is "*an actual and justiciable controversy*" as to whether:

- The claims involve "property damage" as that term is defined;

- Any of the claims involve an occurrence" as that term is defined;

- The alleged liability of Fowler is for "property damage caused by an occurrence during any policy period;"

- Fowler had knowledge, in whole or in part, of any alleged "property damage" prior to the inception of one or more of the policy periods;

- Travelers has a duty to defend the insured against any "suit" as that term is defined in the policy;

- Coverage is excluded for property damage for which the insured has assumed liability;

- Coverage is excluded for "property damage" to that particular part of real property on which an insured or its subcontractors worked, if the "property damage" arose out of the insured's operations;

- Coverage is excluded for liability for "property damage" to the insured's "product;"

- Coverage is excluded for liability for "property damage" to Fowler's work;

- Coverage is excluded under the "impaired property" exclusion;

---

[25] *Id*. (emphasis added)
[26] Dkt. #1 (Travelers' complaint), p. 15, l. 12 – p. 20, l.18.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 9
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

- Coverage is excluded under the sistership exclusion;

- Coverage is limited to a single policy period;

- Coverage is excluded for property damage arising out of the presence of fungi;

- Travelers is entitled to reimbursement of amounts paid for the defense of Fowler.[27]

At no time prior to Mr. Lether's filing of this suit did he or Travelers disclose that Travelers had made any determinations on any of the issues for which Travelers alleges there is "an actual and justiciable controversy."[28]

At no time on or before July 8, 2019 did Travelers provide Fowler the legal or factual basis for its conclusion that any of the bulleted policy provisions supported its decision that there is "no indemnity or defense coverage available under the policies," or that "Travelers is entitled to reimbursement of amounts paid for the defense of the Kiewit claims."[29]

On the same day Travelers alleged in its complaint that Travelers is entitled to reimbursement of amounts paid for the defense of Fowler, it also represented to Fowler in its July 8, 2019 correspondence, that: "Charter Oak is not presently seeking reimbursement of any amounts incurred through the Forsberg & Umlauf firm."[30]

In the three months following Travelers' issuance of its July 8 letter advising that it was continuing to investigate Kiewit's damages through an expert, Travelers has not disclosed the name of the expert, the work he/she has performed, the conclusions he/she has reached, or how those conclusions affect the coverage determination Travelers announced for the first time in its complaint.[31]

---

[27] *Id*.
[28] *Beal Decl.*, ¶13.
[29] *Beal Decl.*, ¶14
[30] *Beal Decl.*, ¶15.
[31] *Beal Decl.*, ¶16.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 10
(2:19-CV-01050 JCC)

### III. EVIDENCE RELIED UPON

Fowler relies upon the pleadings on file herein, and the declarations of Michael Dietzman and Richard T. Beal, Jr., together with exhibits attached thereto.

### IV. LEGAL ARGUMENT

**A.** **AN INSURER MUST COMPLETE ITS INVESTIGATION AND MAKE A COVERAGE DETERMINATION BEFORE AN "ACTUAL AND JUSTICIABLE CONTROVERSY" CAN EXIST.**

In Washington, an insurer is required to conduct an "investigation" which is defined to include "all activities of the insurer directly or indirectly related to the determination of liabilities under coverages afforded by an insurance policy."[32] It may not refuse to pay a claim before it does so.[33] Its investigation must be fair and impartial, and may not prefer the insurer's interests over those of the insured.[34] An insurer may not deny first and fill in its investigation later.[35] Where an insurer concludes there is no coverage for a claim, it must write the insured a letter,[36] disclose all provisions in the policy upon which its denial is based[37], and provide a reasonable explanation of the facts and law on which the coverage denial is based.[38]

**B.** **IT IS UNDISPUTED THAT TRAVELERS PUT ITS OWN INTERESTS ABOVE THOSE OF FOWLER'S BY RACING TO THE COURTHOUSE BEFORE IT COMPLETED ITS INVESTIGATION.**

Travelers' July 8, 2019 letter proves beyond question Travelers had not completed its investigation prior to commencing the instant suit. The fact Travelers announced in that letter that it had hired an "expert" to review Kiewit's damages as part of its coverage investigation

---

[32] WAC 284-30-320(9).
[33] WAC 284-30-330(4).
[34] RCW 48.01.030; **Beal Decl.**, **Ex. E**; *Expedia v. Steadfast Insurance Co.*, 180 Wn.2d 793, 803 (2014).
[35] *Aecon Building Systems v. Zurich American*, 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008).
[36] WAC 284-30-380(1).
[37] *Id.*

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 11
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

1   dispels any legitimate argument by Travelers that it had completed its investigation before

2   announcing its coverage decision the same day in this suit, stating that there is no defense or

3   indemnity coverage available under the policies."

4       It is undisputed that Travelers (1) failed to write a letter to Fowler informing Fowler

5   that Travelers had reached the decision  there is no indemnity or defense coverage for the

6   Kiewit claim, or (2) that Travelers  has failed, right up through the filing of this motion, to

7   provide the factual and legal bases underlying its bare allegations in this suit that there is no

8   coverage.

9       It is undisputed that Mr. Lether was acting in a quasi fiduciary capacity as Travelers'

10   "coverage counsel" at the exact same time he was acting as litigation counsel when he signed

11   the complaint, which is in violation of the very standards of good faith he has subscribed to

12   in declarations and reports submitted in this District.[39]

13       Travelers cannot have it both ways: The only way there could legally be "an actual

14   and justiciable controversy" is if Travelers had reached the conclusion it states in its suit: that

15   there is no defense or indemnity coverage for the Kiewit claims, and that the Court should

16   issue a declaratory judgment to that effect. But if Travelers had in fact reached that

17   determination to the point it could satisfy FRCP 11 in requesting declaratory judgment that

18   there is no defense or indemnity coverage available under the policy, then it reached that

19   decision on the very same day it conceded to its policyholder that it had not completed its

20   investigation.  If the latter is the true set of facts, then Travelers undisputedly prejudged

21   coverage before its investigation was complete.

22

---

23   [38] WAC 284-30-380(1).
     [39] *Beal Decl.*, **Ex. E.**

24   H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 12
     (2:19-CV-01050 JCC)

It is well settled in this District that an insurer who denies coverage before conducting and completing its investigation has committed bad faith and is estopped to deny coverage. In *Aecon Building Systems v. Zurich*, 572 F. Supp. 2d 1227 (2008), Judge Pechman held that an insurer who denied coverage before it finished conducting its investigation had committed bad faith and was estopped to deny coverage.

Judge Pechman started by summarizing the law regarding a reasonable investigation:

"[A]n insurer may not fail to conduct a reasonable investigation simply because it appears initially that the loss is not covered." Fireman's Fund Ins. Co. v. Alaskan Pride Pshp., 106 F.3d 1465, 1470 (9th Cir.1997). "An insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denies coverage based upon suspicion and conjecture." Indus. Indem. Co. v. Kallevig, 114 Wash.2d 907, 917, 792 P.2d 520 (1990) (holding that "an insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a supposed defense which a reasonable investigation would have proved to be without merit"). As explained in Bryant, where "reasonable minds could not differ as to a finding that [the adjuster's] incuriousness and her failure to inquire further" into the claim constitutes a failure to conduct a reasonable investigation of the claim, summary judgment is warranted. Bryant, 414 F.Supp.2d at 1000 (granting summary judgment where insurer did not dispute that it made its coverage decision based on assumptions and misinformation regarding facts surrounding policyholder's death).[40]

Judge Pechman then applied the law to the facts in front of her and rejected Zurich's attempt to "vindicate" its coverage decision through an after-the-fact investigation:

The question here is whether either of the insurer defendants reasonably investigated Aecon's tender. The Court concludes that both insurers' investigations were so unreasonably defective that reasonable minds could not differ that they constitute bad faith…

Zurich argues that evidence in the record—particularly, the Quinault's expert report and attorney Michael Grace's testimony—indicates that Ms. Kreman was correct in her conclusion that the Quinault's claims arose after operations were completed. But Michael Grace's testimony was not available at the time of the denial decision. The question is whether there is an issue of

---

[40] *Aecon Buildings* at 1236.

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

fact regarding whether denial of coverage was unreasonable when it occurred, *not whether later developments could have vindicated Zurich's decision.*[41]

There is simply nothing in *Aecon* which suggests Zurich could have avoided its fate by filing a declaratory judgment action instead of rendering a denial before it had completed its investigation. If *Aecon* permitted this, the prohibition against backfilling a denial with after-the-fact investigation activities could be sidestepped every time through the filing of a declaratory judgment action before the insurer's required investigation was complete.

**C.   TRAVELERS POLICY GIVES IT NO RIGHT TO "DEFEND" A CLAIM---ONLY A SUIT, AND THUS ITS ACTIONS ARE NOT DEFENSIBLE UNDER *NATIONAL SURETY CORP. V. IMMUNEX*.**

In the landmark case of *National Surety Corp. v. Immunex,*[42] the Washington Supreme Court announced that an insurer who is *defending a suit* under reservation of rights may file a declaratory judgment action where it is "uncertain of its obligation to defend its insured."[43] There are at least two reasons this rule does not apply here.

The first is that Travelers' policy granted Travelers no right to defend a claim---only a "suit." The insuring language of the Travelers policy reads in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.[44]

The policy carefully distinguishes between a "claim" on the one hand and a "suit" on the other. While the policy grants the insurer discretion to "investigate" a "claim," the policy is equally careful to give the insurer neither the right nor the duty to *defend* a "claim"---as the above excerpt demonstrates, the right and duty to defend attaches only to a "suit." Under the

---

[41] *Id*. at 1236-1237(emphasis added).
[42] 176 Wn.2d 872 (2013).
[43] *Id*. at 875.
[44] *Deitzman Decl.*, **Ex. A,** definition of "suit," p. 1 of 16.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 14
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

terms of the policy Travelers issued, the term "suit" is only satisfied by a claimant's commencement of a "proceeding" such as a judicial proceeding or an arbitration against the insured:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.[45]

Here it is undisputed Kiewit never filed a "suit" and thus Travelers had neither the right nor the duty to defend, and can therefore not shoehorn its conduct in this matter into *Immunex*.

Secondly, even if *Immunex* extended beyond "suits" to mere "claims," it is undisputed here that Travelers' motivation in seeking declaratory judgment was *not* that it was "unsure" whether coverage existed. If that were the case, Travelers would not have pronounced there was an "actual and justiciable controversy" or affirmatively and unequivocally stated that there is "no indemnity or defense coverage" for the Kiewit claim.

Travelers' only duties here were to conduct and complete its investigation, make its coverage decision, and inform the insured in writing of its decision and of the factual and legal bases for it. Since it did not have a duty to provide for or pay for a defense, the *Immunex* rule did not apply; having reserved all of its rights pending the completion of its investigation, Travelers had no legitimate interest in reaching a decision about coverage until it had completed its investigation.

---

[45] *Dietzman Decl.*, **Ex. A,** definition of "suit," p. 15 of 16.

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

**D.** **WHETHER TRAVELERS HAD CONCLUDED THERE WAS NO COVERAGE** *BEFORE* **COMPLETING ITS INVESTIGATION, OR WHETHER IT HAS NOT YET REACHED A COVERAGE DETERMINATION, UNDER EITHER SCENARIO THE COURT SHOULD DISMISS ITS SUIT FOR DECLARATORY RELIEF.**

### 1. Declaratory judgment regarding the duty to defend cannot be granted where no suit has been commenced against the insured.

Travelers filed its suit under the federal declaratory judgment act. The law is ample that a declaratory judgment action regarding the duty to defend cannot be maintained in the absence of a suit against the insured. It has been long established that a request for declaratory judgment in a situation similar to the instant matter cannot meet the "actual controversy" requirement of the federal act:

> The mere possibility that proceedings might be commenced against an insured regarding an act of the insured's as to which the insurer might contest coverage, is not sufficient to create a controversy within the meaning of the Declaratory Judgment Act or Article III of the Constitution.[46]

In *Georgia Am. Ins. Co. v. Johnson,* the court dismissed a complaint for declaratory judgment to declare no duty to defend existed where it was "only conjecture as to whether any suit w[ould] be filed."[47] In addition, in *Union Insurance v. Soleil Group*[48], a federal district court in South Carolina dismissed a declaratory judgment action regarding the duty to defend in a case where no complaint had yet been filed, noting that the court could not compare the allegations in a complaint to the policy language in order to determine whether Plaintiff had a duty to defend the insureds.

The court there held:

> In this action, no suit has been filed against the Soleil Group regarding exposure to Legionella bacteria. This court therefore cannot compare the allegations in the complaint to the policy language in order to determine whether Plaintiff has a duty to defend the Soleil Group. Plaintiff makes much

---

[46] *Solo Cup Co. v. Fed. Ins. Co.,* 619 F.2d 1178, 1189 (7th Cir.1980).
[47] 712 F. Supp. 530, 532 (S.D. Miss. 1989).
[48] 465 F. Supp. 2d 567, 574 (D.S.C. 2006)

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 16
(2:19-CV-01050 JCC)

of the fact that the individual defendants are likely to file suits against the Soleil Group and in fact have asserted they will do so in their formal pleadings. Even so, any attempt by this court to determine Plaintiff's duty without the benefit of an underlying complaint is impermissible due to the absence of a justiciable controversy.[49]

While the *Soleil Group* decision was based on absence of a justiciable controversy, the same result would be obtained under Washington state law regarding the duty to defend. Washington is an "eight corners" state,[50] holding that the duty to defend must be measured from the eight corners of the suit and the policy, and that extrinsic evidence may not be used to defeat the duty to defend, only to trigger it.[51] Travelers has no legitimate interest in filing a declaratory judgment action where the claimant (Kiewit) has not filed suit or arbitration. This is both an improper use of the federal declaratory judgment statute, and a violation of Washington's "cornerstone" rule of good faith--- that an insurer must "never" put its own interests over those of its insured.

### 2. An insurer may not file a declaratory judgment action to determine the duty to indemnify where there has been no judgment or settlement in the underlying dispute.

It is fundamental that a declaratory judgment action to determine the existence of an insurer's duty to indemnify the insured against claims that have not been fully adjudicated or settled is premature.[52] This is because the duty to indemnify is more narrow than the duty to defend, and must be determined with reference to the actual judgment (or settlement) against the insured.[53]

---

[49] 465 F. Supp. 2d 567, (D.S.C. 2006)
[50] *Expedia v. Steadfast,* 180 Wn.2d 793, 803 (2014).
[51] *Id.*
[52] *Summers v. Scottsdale Indem. Co.,* No. 115CV00092GNSHBB, 2016 WL 1268295, at *4 (W.D. Ky. Mar. 31, 2016); *Pharmacists Mut. Ins. Co. v. Godbee Med. Distributors, Inc.,* 733 F. Supp. 2d 1281 (M.D. Ala. 2010); *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409 (11th Cir. 1995).
[53] *Godbee,* at 1286 ("Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial. *Auto–Owners Ins. Co. v. Toole,* 947 F.Supp. 1557, 1565 (M.D.Ala.1996)(Thompson, J.). "Therefore, a

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

Where it is premature to determine the duty to defend, a fortiori it is premature to determine the duty to indemnify. If the rule were otherwise, a court would be forced to declare coverage obligations as to elements of a claimant's damages before a fact-finder had decided whether the insured was legally responsible for them. This would result in potentially significant waste of judicial resources, requiring courts to consider coverage for liabilities that might or might not materialize. Likewise, it would force an insured to litigate the issue of indemnity coverage *before* its own liabilities had been determined.

### 3. If the Court determines Travelers has violated the cornerstone rule of good faith and fails to shoulder the "almost impossible burden" of overcoming a presumption of harm, the Court must dismiss Travelers' suit because Travelers will be estopped to maintain its policy defenses.

The Court should dismiss Travelers' action on an additional and independent ground. Travelers bases its entire request for declaratory relief upon *policy defenses,* and if estopped to deny coverage, Travelers no longer has the right to pursue them.[54]

Here, whether Travelers denied coverage without telling Fowler it had done so and without having completed its investigation, or whether Travelers truly hasn't made its coverage decision and has sued simply to gain the status of plaintiff, Travelers has placed its own interests over those of its insured, satisfying the "cornerstone" test of bad faith.

Washington law is very well settled that when an insurer violates this cornerstone rule of good faith, the result is coverage by estoppel unless the insurer is able to satisfy "the almost impossible burden" of proving the insured has not been harmed.[55] The most recent

---

determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue."

[54] *Osborne Construction v. Zurich,* 356 F.Supp. 2d 1085 (W.D. Wash. 2018).

[55] *Gosney v. Fireman's Fund,* 3 Wash.App.2d 828 (2018).

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 18
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

1    Washington case on this subject is *Gosney v. Fireman's Fund,* where the court summarized

2    the law on the insurer's burden:

3           The nature of a bad faith claim against an insurer requires that an " ' "almost
            impossible burden" ' " of proof  be placed on either the insured or the insurer.
4           Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc., 161 Wash.2d 903,
            921, 169 P.3d 1 (2007) (quoting Butler, 118 Wash.2d at 390, 823 P.2d 499
5           (quoting Allan D. Windt, Insurance  Claims and Disputes: Representation of
            Insurance Companies and Insureds § 2.09, at 40-41 (2d ed. 1988) ) ). "Either
6           the insured will face the almost impossible burden of proving that ' "he or she
            is demonstrably worse off because of" ' the insurer's bad faith or the insurer
7           will face the almost impossible burden of proving the reverse." Dan Paulson,
            161 Wash.2d at 921, 169 P.3d 1 (quoting *856 Butler, 118 Wash.2d at 390,
8           823 P.2d 499 (quoting WINDT, supra, § 2.09, at 40-41) ). "As between the
            insured and the insurer, it is the insurer that controls whether it acts in good
9           faith or bad. Therefore, it is the insurer that appropriately bears the burden of
            proof with respect to the consequences of that conduct." Dan Paulson, 161
10          Wash.2d at 921, 169 P.3d 1.[56]

11          On this record, the harm from Travelers' conduct is self-evident. By Ms. Sanders'

12   deliberate failure in her July 8, 2019 correspondence to disclose to Fowler that Travelers had

13   made an adverse coverage determination, Travelers was able to garner the role of plaintiff in

14   this suit.

15          By refusing to defer its coverage determination (and suit) until after it has completed

16   its quasi-fiduciary investigation, Travelers permanently deprived Fowler of a decision based

17   on a fair and impartial investigation of all the facts Travelers was required to investigate.

18          By deliberately refusing to send Fowler a coverage determination letter identifying

19   the facts and law upon which its coverage determination is based, Travelers has gained a

20   tactical advantage in this suit to which it is not legally entitled, and effectively forced Fowler

21   to incur the expense of conducting formal discovery to uncover the bases for denial.

22

23
     _____
     [56] *Id*. at 855.
24
     H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 19
     (2:19-CV-01050 JCC)

But perhaps the greatest harm which has resulted from Travelers' conduct is the damage to the integrity of Travelers' investigation. Both sides agree the investigation and decision-making process must be fair and impartial, and where an insurer sues for declaratory relief before it makes its decision, no insured can be able to trust that the remaining investigation will be anything other than a foregone conclusion, driven by the pre-determined litigation position the insurer has announced in its suit.

As such, Travelers is legally estopped to rely on its policy defenses, and there is no part of Travelers' case left to decide, since its entire declaratory judgment suit concerns only its policy defenses.

> **4.  Under the doctrine of judicial estoppel, Travelers may not on the one hand claim there is "no indemnity or defense coverage available under the policy" and simultaneously deny that it has made a coverage determination before completing its investigation on the other.**

As discussed throughout this motion, Travelers repeatedly takes a judicial position in its suit that there is no indemnity or defense coverage, that there is an "actual and justiciable controversy" and that the court should issue a declaration that there "is no duty to defend" and "no duty to indemnify" Fowler from the damages Kiewit has claimed and backcharged Fowler.[57]

But in the very same suit, Travelers has formally denied that it reached a coverage determination before completing its investigation.[58]

Stated another way, in the coverage part of the case, Travelers claims "there is an actual and justiciable controversy" regarding coverage, but in the bad faith part of the case, Travelers claims it has not made its coverage determination.

---

[57] Dkt. # 1 (Travelers' complaint), p. 15, l. 12 – p. 20, l.18.
[58] Dkt. # 9, pp. 5, l. 26.

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 20
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

This type of litigation tactic runs afoul of the judicial estoppel doctrine in the Ninth Circuit.

The seminal case in the Ninth Circuit on judicial estoppel is *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC.*[59] In that case, the Court discusses the law on judicial estoppel in this Circuit:

> Federal law governs the application of judicial estoppel in federal courts, and a district court's application of judicial estoppel is reviewed for abuse of discretion…

> "[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' " New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). It is an equitable doctrine invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.' " Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir.2001) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990)) (alteration omitted).[60]

The shoe fits here. Either there *is* an actual and justiciable controversy or there *isn't*. If Travelers has not made a coverage determination and is still investigating (a judicial position it takes to defend Fowler's bad faith counterclaim) then there is no "actual and justiciable controversy" and Travelers is in violation of FRCP 11 for taking the position there is. But if on the other hand there *is* an "actual and justiciable controversy" and Travelers *has* made its coverage determination before completing its investigation, and is concealing that fact from Fowler and the Court, then it has violated black letter law that an insurer may not "deny first" and investigate later to "vindicate [its] decision."[61]

---

[59] 692 F.3d 983 (9th Cir. (2012).
[60] *Id.* at 992-993.
[61] *Aecon Building Systems v. Zurich American,* 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008).

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 21
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

1  While declaratory judgment is a creature of a federal statute, it is equitable in nature

2  and is subject to equitable defenses.[62] Thus, whether the Court approaches Travelers'

3  litigation tactic from the standpoint of judicial estoppel, unclean hands, or coverage by

4  estoppel under state law, the result is the same: Travelers suit should be dismissed.

5  ## V.  CONCLUSION

6  In *Wendle v. Farrow*[63] *,* a now defunct Federal Way insurance company filed a lawsuit

7  against a mother who had just settled a wrongful death claim when her son drowned in the

8  next-door neighbor's pool. The ink was no sooner dry on that settlement when the insurer

9  sued the Mom it had just settled with, for contribution to recover a portion of the settlement

10  she had just negotiated.

11  If the concluding paragraph of the decision is any indication, the Court believed the

12  filing of the lawsuit violated Washington's good faith statute. The Court ended its decision

13  this way:

14  We direct United Pacific's attention to RCW 48.01.030, which provides:

15  The business of insurance is one affected by the public interest, requiring that
16  all persons be actuated by good faith, abstain from deception, and practice
   honesty and equity in all insurance matters. Upon the insurer, the insured, and
   their representatives rests the duty of preserving inviolate the integrity of
17  insurance.

18  Affirmed.

19  *Wendle* stands as a reminder that RCW 48.01.030 is a limit beyond which insurers

20  may not go in filing lawsuits. Travelers' suit against Fowler makes a sham out of the

21  principle that an insurer may not make up its mind on coverage first, and feign that its mind

22

23  ---
[62] *Abbott Laboratories v. Gardner,* 387 U.S. v136, 155 (1967), *abrogated on other grounds, Califano v. Sanders,* 430 U.S. 99 (1977).
[63] 102 Wn.2d 380 (1984).

24  H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 22
(2:19-CV-01050 JCC)

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400

1    is *not* made up as it continues to conduct the very investigation which is necessary to

2    "backfill" its decision. If "never" means "never"[64] then Travelers violated the cornerstone

3    rule of insurance in making a judicial statement out of one side of its mouth that there is no

4    coverage, and out of its other, denying it has made its coverage decision before completing

5    its investigation. This Court should **grant** Fowler's motion for summary judgment, and

6    dismiss Travelers declaratory judgment complaint with prejudice.

                DATED: October 10, 2019.

                           ASHBAUGH BEAL LLP

                        By:   *s/ Robert S. Marconi*
                              Robert S. Marconi, WSBA #16369
                              bmarconi@ashbaughbeal.com
                              701 5th Avenue, Suite 4400
                              Seattle, WA 98104
                              *Attorneys for H.D. Fowler Company*

---

[64] *Expedia v. Steadfast Insurance,* 180 Wn.2d 793, 803 (2014) ("It is a cornerstone of insurance law that an insurer may never put its own interests ahead of its insured's.")

H.D. FOWLER'S MOTION FOR SUMMARY JUDGMENT - 23
(2:19-CV-01050 JCC)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Thomas Lether
>tlether@letherlaw.com
>Eric J. Neal
>eneal@letherlaw.com
>Lether & Associates, PLLC
>1848 Westlake Ave N., Suite 100
>Seattle, WA 98109
>*Counsel for Plaintiff*
>
>Angelia D. Wesch
>wesch@oles.com
>Melia A. Preedy
>preedy@oles.com
>Oles Morrison Rinker & Baker
>701 Pike Street, Suite 1700
>Seattle, WA 98101
>*Counsel for Kiewit Infrastructure West Co.*

The foregoing is true and correct to the best of my knowledge and belief.

Dated October 10, 2019, at Seattle, Washington.

<i>s/ Citty Brugalette</i><br>
Citty Brugalette, Legal Assistant

**Ashbaugh Beal**
701 FIFTH AVE., SUITE 4400
SEATTLE, WA 98104
T. 206.386.5900  F. 206.344.7400